[No. 2250]

THE STATE OF NEVADA, EX REL. GEORGE A. COLE, AS STATE CONTROLLER OF SAID STATE OF NEVADA, PETITIONER, v. HARRY H. HILL, AS FORMER TREASURER OF THE COUNTY OF WASHOE, STATE OF NEVADA, AND D. W. DUNKLE, AS TREASURER OF THE COUNTY OF WASHOE, STATE OF NEVADA, AND THE CITIES OF RENO AND SPARKS OF THE COUNTY OF WASHOE, STATE OF NEVADA, RESPONDENTS.

[160 Pac. 772]

1. INTOXICATING LIQUORS—STATE LICENSES FOR CITY RETAIL SALES—DISPOSITION OF MONEY—"AMOUNT."

Under Revenue Act of 1915 (Stats. 1915, c. 178), sec. 3, requiring persons disposing of liquor "in less quantities than a quart," in a city, to take out a county license from the sheriff; section 6, requiring persons selling liquor either at retail or wholesale, in addition to other licenses, to take out a state license, section 8 providing for the sheriff, as ex officio collector, issuing and collecting for, a retail liquor license to one engaged in selling liquor in quantities less than five gallons, section 9, requiring one selling liquor in quantities in excess of five gallons to take out a wholesale state liquor license. section 10, providing that monthly the sheriff shall pay to the county treasurer "all" money received by him for state liquor licenses, "in like manner and form as is hereinafter provided for the payment of county license moneys," and that in a county having a city therein he shall pay to it one-half of the "amount" of license moneys collected for disposition of liquors in less quantities than a quart, within its limits, half of the amount from state as well as county licenses for such disposition in quantities less than a quart is to be paid the city, and the balance only to the county

treasurer, so that such half payable to the city is not included in "all moneys received" by the county treasurer for state liquor licenses "in accordance with the provisions of this act," for which section 11 requires him to account to the state treasurer, the word "amount," in section 10, referring to the total of two sums (citing Words and Phrases, Second Series, Amount).

*Mandamus* proceeding by the State, on relation of George A. Cole, State Controller, against Harry H. Hill, former treasurer of the county of Washoe, and others. **Writ denied.**

*Geo. B. Thatcher,* Attorney-General, for Petitioner:

State liquor licenses are divided into two classes, wholesale and retail. A retail dealer is one who deals in liquor "in quantities less than five gallons"; a wholesale dealer, one who deals in liquor "in quantities in excess of five gallons." (Act of Mar. 22, 1915, secs. 8, 9; Stats. 1915, p. 236.)

The words "in quantities in excess of five gallons," and the words "in quantities less than five gallons," are descriptive.

Under the provisions of section 3 of the same act, county licenses are collected from any person dealing in liquors "in less quantities than one quart."

The closing paragraph of section 10 gives to incorporated cities one-half of the amount of "license moneys collected from persons dealing in liquors in less quantities than one quart." These words describe which license moneys shall be divided, and the only license moneys which comply with this description are those derived from county licenses, collected under the provisions of section 3 of the act.

Incorporated cities are entitled to one-half of the county liquor license moneys collected within their boundaries, but are not entitled to any part of either state retail or wholesale liquor license moneys provided for in sections 8 and 9 of the act.

*L. D. Summerfield,* City Attorney of Reno, for Respondents:

Section 10 of the act in question (Stats. 1915, p. 239)

contemplates a division with incorporated cities of the moneys received from persons operating under state liquor licenses within the corporate limits. A person paying a state license under section 8 of the act to dispose in less quantities than five gallons also has necessarily included therein the privilege of disposing in less quantities than one quart. The county license also, by section 3 of the act, is one to dispose in less quantities than one quart, including the same privilege to this extent as the state license. Therefore, when the concluding clause of section 10 provides for the payment into the city treasury of one-half of the license moneys collected "for" disposing in less quantities than one quart, both state and county license moneys are included. The clause in controversy, by its very wording, provides for a division of the moneys collected for disposing in less quantities than one quart, from whatever source that privilege is derived.

The statute should be interpreted in accordance with the well-known rules and principles of statutory construction. (36 Cyc. 1102, 1118; *Torreyson* v. *Board*, 7 Nev. 19; *Ex Parte Siebenhauer*, 14 Nev. 365; *Ex Parte Prosole*, 32 Nev. 378, 108 Pac. 630.)

By the Court, MCCARRAN, J.:

This is an original proceeding in *mandamus*, instituted by petitioner, as state controller, to compel the treasurer of Washoe County to pay over certain moneys in his hands, received from the sheriff of that county as ex officio license collector. The authority for the act sought to be required of the county treasurer is found in the several sections of an act of the legislature of 1915 entitled:

"An act to provide revenue for the support of the government of the State of Nevada and to repeal all acts and parts of acts in conflict herewith." (Stats. 1915, p. 236.)

Section 3 of the act, among other things, provides:

"Any person or persons who may dispose of any spirituous, malt, or fermented liquors or wines, in less quantities than one quart, within the confines, or within

one mile thereof, of any city or town shall, before the transaction of any such business, take out a county license from the sheriff of the county in which he or she proposes to do such business, and pay therefor the sum of thirty dollars per quarter year, or proportionate amount for fractional quarter as hereinafter provided. * * * "

Section 6 of the act provides:

"Every person, firm, company, or corporation manufacturing or selling, either at retail or wholesale, any spirituous, malt, or vinous liquors, shall, in addition to other licenses provided by law, take out a state liquor license as hereinafter provided, which license shall not be transferable by sale, assignment, or otherwise."

Section 8 of the act provides:

"The sheriffs of the respective counties, as ex officio collectors of licenses, shall issue and collect all state liquor licenses, and shall, upon the payment of one hundred ($100), issue a retail state liquor license to any person, firm, company, or corporation engaged in selling spirituous, malt, or vinous liquors in quantities less than five gallons, and the word 'Retail' shall be written in red ink across the face of such license. * * * "

Section 9 provides:

"Any person, firm, company or corporation disposing of spirituous, malt, or vinous liquors in quantities in excess of five gallons shall be considered a wholesaler or rectifier, and shall pay a state liquor license of one hundred and fifty dollars ($150) per annum, and the word 'Wholesale' shall be written across the face of such license, in red ink."

The section of the act most vital to the determination of the matter at bar, and which we are asked to construe here, is section 10, which in its provisions is as follows:

"On the first Monday in each month the sheriff shall pay over to the county treasurer all moneys received by him for state liquor licenses in like manner and form as is hereinafter provided for the payment of county license moneys; and the duties and liabilities of the sheriff, treasurer, and auditor with relation thereto shall be the

same as hereinafter prescribed with relation to county licenses. The county treasurer shall, between the second and third Mondays in each month, forward to the state controller a certified detailed statement of all moneys paid to him by the sheriff in accordance with this section, which statement shall show the number of each license, whether wholesale, retail, or druggists, to whom and date issued, period covered, amount of each license, and total amount received; which statement shall be furnished to the county treasurer by the sheriff and shall be the basis of the monthly settlement. In every county in this state which now has or may hereafter have a duly incorporated city government, it shall be the duty of the license collector of said county to pay into the city treasury one-half of the amount of license moneys collected from any person or persons for disposing of any spirituous, malt or fermented liquors, or wines, in less quantities than one quart, within the corporate limits of said city."

It must be observed that section 6 of the act contemplates the requirement of a state liquor license, in addition to other licenses provided by law, for every person, firm, company, or corporation manufacturing or selling liquors either at retail or wholesale. This section is complete within itself, and the words therein contained must be given their ordinary and usual significance.

Section 8 requires the taking out of a state liquor license, to be known as a retail license, and to be required of all persons, firms, companies, or corporations engaged in selling liquors in quantities less than five gallons.

By section 9 a state liquor license, designated as a wholesale license, is required to be taken out by all persons, firms, companies, or corporations disposing of liquors in quantities in excess of five gallons.

Manifestly the latter part of section 10, which requires the license collector to pay into the city treasury one-half of the amount of license moneys collected from any person or persons for disposing of any spirituous, malt, or fermented liquors, etc., in less quantities than one quart, does not apply to state wholesale liquor licenses,

because by the provision of section 9, authorizing the issuance of such license, the provision is made that such license shall be issued only to those disposing of the liquor in quantities in excess of five gallons. The term "in excess of five gallons," as used in section 9, is exclusive of the term "in less quantities than one quart," as used in section 10. But does the term "in quantities less than five gallons," as used in section 8 with reference to state retail licenses, include that which is comprehended by the term "in less quantities than one quart," as used in section 10, applicable to the division of license moneys and the payment of one-half of the sum into the city treasury?

The whole contents of sections, 3, 4, 5, 6, 7, 8, 9, and 10 have to do exclusively and entirely with liquor licenses. Hence it will not be seriously contended, we apprehend, that any part of section 10 has to do with or refers to the payment or turning over of license moneys other than that secured from the several classes of liquor licenses.

Some contention is made that the word "all" as used in the first part of section 10 precludes the idea of a division of the money received by the license collector for state liquor licenses only. As we view this expression used in section 10, it must be read in conjunction with that which follows, and applies with equal force to the disposition required to be made by the license collector of county liquor licenses. All moneys received by the license collector for state liquor license must, as we view the provisions of the first part of section 10, be paid over to the county treasurer in like manner and form as is provided for the payment of county license moneys.

So we inquire: What is the manner and form provided by this statute for the turning over of county liquor licenses by the license collector? Indeed, we find no other provision in the statute in which the manner and form of paying over the license collected by the sheriff to another custodian, either state, county, or municipal, is provided for, save and except that manner and form prescribed in section 10 itself. So we look to section 10

for that manner and form in which or by which county licenses are to be turned over from the license collector to another custodian. The words "manner and form" are, as we view them, expressive of the statement to be rendered and the segregation to be made by the license collector as the same are provided for in the section. So the manner and form of paying over state liquor license moneys is the same manner and form that is to be followed in the paying over of county liquor license moneys.

This brings us to the significant part of section 10, which, unless we declare certain of its expressions to be devoid of meaning, is significant of the manner and form for the turning over by the license collector of liquor license moneys collected within his jurisdiction. It prescribes:

"In every county in this state which now has, or may hereafter have, a duly incorporated city government, it shall be the duty of the license collector of said county to pay into the city treasury one-half of the amount of license moneys collected from any person or persons for disposing of any spirituous, malt or fermented liquors, or wines, in less quantities than one quart, within the corporate limits of said city."

Section 3 of the act in substance provides that persons disposing of liquor in less quantities than one quart within the confines of any city shall take out a county license. Section 6 provides, in substance, that those who dispose of liquor in less quantities than one quart must secure a state retail liquor license in addition to other licenses. In these two sections, it will be observed, the specific designation is made of those who dispose of liquor in less quantities than one quart. These sections provide that both state retail liquor license and county liquor license shall be carried by the parties disposing of the liquor in a specific way, to wit, in less quantities than one quart. The same significant term is used in the latter part of section 10, wherein the manner and form of turning over the amount of moneys collected from licenses so issued is provided for; and there it is prescribed in substance that one-half of the amount of license moneys collected

from any person disposing of liquors in less quantities than one quart shall be paid into the city treasury where an incorporated city exists within the county.

In that manner and form prescribed by the statute for the disposition of the moneys collected no designation is made or exception created as to moneys collected from that class of dealers who dispose of liquor in quantities less than one quart and who must operate under the two licenses. If it were the intention of the legislature that the division of money should apply only to moneys collected from county licenses, we assume that that body would have found it as convenient to so declare, as was done in section 15 of the very same act, where, in dealing with another class of license, to wit, dance-house licenses, we find the statute to read:

"All moneys received for licenses under the provisions of this section shall be paid three-quarters into the county treasury and one-quarter into the state treasury for general county and state purposes respectively."

True it is that in sections 8 and 9 the licenses provided for thereunder are designated as state licenses; but the very fact that the latter part of section 10 makes no such designation as affecting a division of the money by the license collector is to our mind conclusive of the proposition that it was the intention of the legislature that it should apply to state and county licenses with equal force. Had the legislature intended otherwise, it would have so designated, at least by a substantial intimation. The first part of section 10, providing that the sheriff shall pay over to the county treasurer "all moneys received by him for state liquor licenses," if it stood alone in these words, might bear out the contention that the word "all" was intended to apply to state moneys only; but the term "in like manner and form as is hereinafter provided for the payment of county license moneys" fixes the proposition, and emphasizes the conclusion that all state liquor license money was to be subject to the same "manner and form" of distribution as was provided for with reference to county license moneys, and as to the

latter the division by the license collector is provided for specifically.

Section 11 is referred to as tending to clarify the situation. The county treasurer is by section 11 required to include in his regular semiannual statement with the state treasurer "all moneys received by him on account of state liquor licenses in accordance with the provisions of this act." What are "all moneys received by him for state liquor licenses in accordance with the provisions of this act?" The answer to that interrogatory comes from section 10, wherein it provides for a segregation of the money, not by the county treasurer, but by the county license collector before he renders his accounting to the county treasurer. Hence "all moneys received by him [the county treasurer] for state liquor licenses" signifies all moneys turned over from the county license collector to him as county treasurer. Those are all of the moneys for which he can be accountable, because the segregation takes place before the county license collector renders his statement to the county treasurer.

If it had been the intention of the legislature to require the county treasurer to account to the state treasurer for all the moneys collected from state licenses, language to this effect could easily have been used. How comprehensive and effective of the purpose it would have been if the legislature had said the county treasurer shall include in his regular semiannual statements with the state controller all moneys collected on account of state liquor licenses. But not so. The legislature, evidently mindful of the purpose sought to be accomplished, said:

"The county treasurer shall include in his regular semiannual settlements with the state treasurer all moneys received by him on account of state liquor licenses."

And then, to further emphasize that there were provisions in the bill which affected moneys collected from state liquor licenses by the county license collector, the legislature inserted the words "in accordance with the provisions of this act."

It is asserted that, inasmuch as the latter part of section 10, providing as it does for the division of liquor license moneys, was an independent statute enacted by the legislature of 1893 (Stats. 1893, p. 25), and that when this provision stood as an independent act no such construction was placed upon it as that contended for by respondent, and inasmuch as the sheriff of Washoe County construed the language of the statute of 1893 in the manner now contended for by petitioner, therefore this language, when incorporated into another statute which of itself repeals the act of 1893, should receive the same construction. This contention, we think, falls by the weight of its own position as it stands in the history of legislation upon the subject of revenue derived from liquor licenses in this state. It was not until 1905—twelve years after the enactment of the statute of 1893—that the legislature of this state provided for a state wholesale and a state retail liquor license (Stats. 1905, p. 228), and in that act a specific provision appears, wherein it is set forth:

"The sheriffs of the respective counties of this state are hereby required to make quarterly statements to and settlements with the state controller in the matter of the licenses herein authorized and required to be issued and collected, and to pay into the state treasurer quarterly all moneys by them severally collected for such licenses, taking his receipt therefor."

The provisions of the act of 1905 referring to the state retail and state wholesale liquor licenses were engrossed into what might be termed, at least for the purpose of convenience, a compilation of certain license acts theretofore enacted. By the statute of 1915, construction of which we are required to make here, all of the wholesale and retail liquor licenses acts, both state and county, were embodied into one law. The provision of the act of 1905, whereby the sheriffs of the several counties were "required to make quarterly statements to and settlements with the state controller, * * * and to pay into the state treasurer quarterly all moneys by them

severally collected," was dropped out of the law, and in the place of such provision the legislature of 1915 said:

"On the first Monday in each month the sheriff shall pay over to the county treasurer all moneys received by him for state liquor licenses in like manner and form as is hereinafter provided for the payment of county license moneys."

And as a further provision and specific direction in place of the provision of the act of 1905 the legislature of 1915 said:

"In every county in this state which now has or may hereafter have a duly incorporated city government, it shall be the duty of the license collector of said county to pay into the city treasury one-half of the amount of license moneys collected from any person or persons for disposing of any spirituous, malt or fermented liquors, or wines, in less quantities than one quart, within the corporate limits of said city."

Not alone one-half of the county license moneys collected, as is contended by petitioner, but "one-half of the amount of license moneys collected," are the words of the statute. How are we to read into this provision a something not there found? How shall we say that this provision shall apply only to a certain class of liquor licenses, eliminating another class?

The word "amount," as used in the latter part of section 10, must be given its ordinary and usual meaning and significance. In Webster's Dictionary it is held to mean "the sum total of two or more particular sums or quantities," and courts have held that the word "amount" referred to the total of two sums. (See Words and Phrases Judicially Defined, Second Series.) The term, used as it is in the latter part of section 10, must, as we view it, be construed as referring to the total of all license moneys collected from any person or persons disposing of liquor in less quantities than one quart. If the word "amount," as used in the latter part of section 10, were intended to apply only to the total of county liquor licenses, why was it not so expressed by the legislature? And when the

term is used, as here, at the conclusion of a section of the law, which section has to do exclusively with the disposition and segregation of the moneys collected by the county license collectors without specifying an exception, how can the word "amount" be construed as having a more limited significance than that of its usual and ordinary acceptation?

The latter part of section 10, as we view it, directs the division of license moneys to be applicable to both state and county licenses issued to parties disposing of liquor in less quantities than one quart.

The writ prayed for should be denied.

It is so ordered.

*Per Curiam:*

Petition for rehearing denied.